# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**ATTORNEY FOR APPELLANT**

Charles W. Lahey
South Bend, Indiana

**ATTORNEYS FOR APPELLEE**

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
James D. Boyer
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of A.T., Minor Child,

and,

J.M., Father,

*Appellant-Respondent,*

v.

February 24, 2016

Court of Appeals Cause No. 71A03-1509-JT-1328

Appeal from the St. Joseph Probate Court

The Honorable James N. Fox, Judge
The Honorable Graham C. Polando, Magistrate

Trial Court Cause No. 71J01-1402-JT-18



Department of Child Services,

*Appellee-Petitioner.*

**Barnes, Judge.**

# Case Summary

J.M. ("Father") appeals the termination of his parental rights to A.T. We affirm.

# Issues

Father raises two issues, which we revise and restate as:

I.    whether the proper procedures were followed under the Indian Child Welfare Act; and

II.   whether the termination of Father's parental rights is supported by clear and convincing evidence.

# Facts

A.T. was born in February 2011 to Father and K.T. ("Mother"). The Department of Child Services ("DCS") filed a petition alleging that A.T. was a child in need of services ("CHINS") because she tested positive for drugs at her birth and because Mother tested positive for cocaine. Father and Mother

admitted that A.T. was a CHINS, and A.T. was not removed from their home at that time. In June 2011, Father tested positive for cocaine, and the trial court ordered him to leave the home and have supervised visitation. In October 2011, Father again tested positive for cocaine, and the trial court ordered him to participate in an intensive drug treatment program.

[4] In May 2012, the trial court ordered that A.T. be placed in foster care due to her parents' persistent drug usage. Father continued to test positive for drugs, and he was arrested in May 2013 for domestic battery against Mother. Father was convicted and sentenced and later violated his probation. The trial court ordered Father to participate in a domestic violence program, but he attended only five of the twenty-six sessions. Father has not seen A.T. since June 2013.

[5] In March 2014, DCS filed a petition to terminate Father's and Mother's parental rights to A.T. Mother voluntarily relinquished her parental rights to A.T. In October 2014, Father disclosed to DCS for the first time that he believed A.T. to have Indian ancestory. On November 12, 2014, DCS filed its Indian Child Welfare Act ("ICWA") notice and served the notice on Father, the United States Secretary of the Interior, and the Apache tribe. DCS filed an additional notice pursuant to the ICWA on December 29, 2014. The second notice was served on Father and eight Apache tribes. In both notices, DCS noted that Father "has claimed tribal eligibility for the Apache Tribe." Ex. p. 207, 230. However, Father was unable to identify a tribal agent or specific area of Apache. Father "was also unable to identify his paternal grandmother's maiden name, through whom he has claimed tribal eligibility." *Id.*

In July 2015, the trial court conducted an evidentiary hearing on DCS's petition to terminate Father's parental rights. The trial court entered findings of fact and conclusions thereon terminating Father's parental rights. Father now appeals.

## Analysis

### I. *Indian Child Welfare Act*

Father first argues that DCS failed to send the proper notice required by the ICWA, 25 U.S.C. §§ 1901-1963. The power of state courts to conduct termination proceedings involving children of Indian ancestry may be subject to significant limitations under the ICWA. *In re S.L.H.S.*, 885 N.E.2d 603, 612 (Ind. Ct. App. 2008). Although a trial court, after a proper petition for transfer of the proceeding, is required to transfer to an Indian tribe's jurisdiction any proceeding to terminate the parental rights of an Indian child not domiciled or residing within the reservation of the Indian child's tribe, *see* 25 U.S.C. § 1911(b), the availability of this right to transfer is contingent on the applicability of the ICWA to the proceeding. *Id.* "Thus, the party who seeks to invoke a provision of the ICWA has the burden to show that the act applies in the proceeding." *Id.*

Applicability of the ICWA depends on whether the proceeding to be transferred involves an "Indian child," which is defined as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." 25 U.S.C.A. § 1903(4). Here, there is no evidence that A.T. is a

member of an Indian tribe or that she is eligible for membership and Father is a member of an Indian tribe. Because Father has failed to provide any evidence that A.T. is an Indian child within the purview of the ICWA, we conclude that the ICWA did not apply to the proceedings to terminate Father's parental rights.

[9] Moreover, Father's only argument on appeal is that DCS failed to send notice to the Secretary of the Interior as required by 25 U.S.C. § 1912. Father mentions only the December 2014 notice. However, DCS also sent a notice to the Secretary of the Interior and the Apache tribe in November 2014. Father's argument fails.

## II. Termination of Parental Rights

[10] Father challenges the termination of his parental rights to A.T. The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. *In re I.A.*, 934 N.E.2d 1127, 1132 (Ind. 2010). "A parent's interest in the care, custody, and control of his or her children is 'perhaps the oldest of the fundamental liberty interests.'" *Id.* (quoting *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054 (2000)). "Indeed the parent-child relationship is 'one of the most valued relationships in our culture.'" *Id.* (quoting *Neal v. DeKalb County Div. of Family & Children*, 796 N.E.2d 280, 285 (Ind. 2003)). We recognize of course that parental interests are not absolute and must be subordinated to the child's interests when determining the proper disposition of a petition to terminate parental rights. *Id.* Thus, "'[p]arental rights may be terminated when the parents are unable or

unwilling to meet their parental responsibilities.'" *Id.* (quoting *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*).

[11] When reviewing the termination of parental rights, we do not reweigh the evidence or judge witness credibility. *Id.* We consider only the evidence and reasonable inferences that are most favorable to the judgment. *Id.* We must also give "due regard" to the trial court's unique opportunity to judge the credibility of the witnesses. *Id.* (quoting Ind. Trial Rule 52(A)). Here, the trial court entered findings of fact and conclusions thereon in granting DCS's petition to terminate Father's parental rights. When reviewing findings of fact and conclusions thereon entered in a case involving a termination of parental rights, we apply a two-tiered standard of review. First, we determine whether the evidence supports the findings, and second we determine whether the findings support the judgment. *Id.* We will set aside the trial court's judgment only if it is clearly erroneous. *Id.* A judgment is clearly erroneous if the findings do not support the trial court's conclusions or the conclusions do not support the judgment. *Id.*

[12] Indiana Code Section 31-35-2-8(a) provides that "if the court finds that the allegations in a petition described in [Indiana Code Section 31-35-2-4] are true, the court shall terminate the parent-child relationship." Indiana Code Section 31-35-2-4(b)(2) provides that a petition to terminate a parent-child relationship involving a child in need of services must allege, in part:

> (B)     that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

DCS must establish these allegations by clear and convincing evidence. *Egly v. Blackford County Dep't of Pub. Welfare*, 592 N.E.2d 1232, 1234 (Ind. 1992).

[13] Father first challenges the trial court's conclusion that termination is in A.T.'s best interests. Father argues that A.T.'s placement "with a lesbian couple is not in the child's best interests . . . ." Appellant's Br. p. 7. However, the relevant inquiry at this point is whether "termination is in the best interests of the child" not whether the child's placement is in her best interests. I.C. § 31-35-2-4(b)(2). In determining what is in the best interests of a child, the trial court is required to look at the totality of the evidence. *D.D.*, 804 N.E.2d at 267. In doing so,

the trial court must subordinate the interests of the parents to those of the child involved. *Id.*

[14] The trial court found that termination of Father's parental rights was in A.T.'s best interests because of the lengthy termination proceedings, Father's cocaine usage, and Father's incarceration and probation violation. Father does not challenge any of the individual findings regarding his drug usage or criminal history. A.T. is thriving in her foster care placement, and her foster parents have expressed a desire to adopt A.T. Both the DCS case manager and the CASA testified that termination of Father's parental rights was in A.T.'s best interests. We cannot say that the trial court's finding that termination of Father's parental rights was in A.T.'s best interests is clearly erroneous.

[15] Next, Father argues that DCS does not have a satisfactory plan for A.T.'s care and treatment. According to Father, a more appropriate plan would be for A.T. to remain in her foster parents' care but still allow contact with Father when he is sober. Father contends that placement with a lesbian couple without a male father-figure would be damaging to A.T. In order for the trial court to terminate the parent-child relationship, the trial court must find that there is a satisfactory plan for the care and treatment of the child. *D.D.*, 804 N.E.2d at 268. This plan need not be detailed, so long as it offers a general sense of the direction in which the child will be going after the parent-child relationship is terminated. *Id.* The DCS's plan is for A.T. to be adopted, and this is a satisfactory plan. Whether adoption by her foster parents is suitable is an issue more appropriately addressed by the adoption court. The trial court's

finding that DCS has a suitable plan for A.T.'s future care is not clearly erroneous.

## Conclusion

[16] Father failed to demonstrate that A.T. was subject to the ICWA and, alternatively, DCS properly sent a notice to the Secretary of the Interior. Further, the trial court's termination of Father's parental rights to A.T. is not clearly erroneous. We affirm.

[17] Affirmed.

Robb, J., and Altice, J., concur.